**SIGNED THIS: June 14, 2005**

```
                          _____
                                  LARRY LESSEN
                          UNITED STATES BANKRUPTCY JUDGE
```
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| JERRY LEE TRENHAILE, ) | |
| ) | Case No. 04-72737 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| COMMUNITY STATE BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 04-7162 |
| ) | |
| JERRY LEE TRENHAILE, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

The issue before the Court is whether a debt should be determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) because it was obtained through the use of a false financial statement.

The Plaintiff, the Community State Bank, opened for business

-1-

in 1977 in Shelbina, Missouri.  The Defendant, Jerry Lee Trenhaile, has borrowed money from the Bank since it opened.

On September 24, 1996, the Defendant gave the Bank a promissory note in the amount of $21,481.44.  The note has been renewed every year since then.  The Defendant sold some equipment that was given as collateral for the note and gave the proceeds to the Bank.  Otherwise, the Defendant simply paid the interest on the note every year.  The President of the Bank, Jon Best, testified that the Bank asked for a payment on the principal every year, but the Defendant kept saying that he would make a principal payment next year.  The Defendant testified that the Bank did not ask for payments on the principal.

The Defendant gave the Bank several financial statements over the years.  The two most recent financial statements are dated January 3, 2003, and May 8, 2004.  Both financial statements indicate that they were prepared for the "purpose of securing credit from time to time" and that the statement "is certified to be true and correct."  The Defendant signed both statements.

The January 3, 2003, financial statement shows total assets of $36,450.  This sum includes $1,950 in cash, $22,650 in EPI stock, and $13,000 in three cars, of which $12,000 is attributed to a 1977 Corvette.  The Defendant's only liability is listed as his $20,680 loan with the Bank which is secured by the three vehicles.

The May 8, 2004, financial statement shows cash on hand of $13,750, EPI stock with a market value of $19,000, and the Corvette valued at $10,000.  The only liability is the $20,480 loan with the Bank that is secured by the Corvette.

The Defendant filed a petition pursuant to Chapter 7 of the

-2-

Bankruptcy Code on June 18, 2004.  The amount due to the Bank on this debt was $21,160.51.

The bankruptcy schedules filed with the petition show total assets of $5,450, total secured debt of $22,000, and total unsecured debt of $209,950.  The Defendant's primary asset is the 1997 Corvette, which is valued at $5,000 (a $5,000 drop from the valuation just 40 days earlier in the financial statement).  The Bank is listed as the only secured creditor.  The unsecured debt includes $122,000 for a student loan incurred in 1996, an $8,000 medical bill from 2001, $21,800 related to losses in the commodities market, $30,300 in credit card debt from 1996, $10,000 in credit card debt from 2000, and various other credit card debts.

The Defendant testified that he did not list his EPI stock on his bankruptcy schedules because he thought it was worthless.  The Defendant admitted that he was mistaken in not disclosing in his schedules that he was the beneficiary of a life insurance policy.  He stated that he forgot about the life insurance policy.  He valued the policy at $500.

The Defendant explained that the $120,000 student loan was for his son and he has never been called upon to make payments on the debt.  He further testified that about $37,000 of credit cards was written off a long time ago.  He only listed these debts in his bankruptcy schedules out of an abundance of caution.

The Defendant is 69 years old.  He has a high school degree and has worked his whole life as a farmer.  He is not employed now. His sole source of income is the $939 he receives every month from social security.

The Defendant explained that he had to file bankruptcy because

he got caught trading in the commodities market. He lost $21,000 in a very short period of time. He borrowed $6,800 from a pawn shop to pay his broker. He did not disclose in his statement of financial affairs that he transferred $3,800 to his broker within 90 days of filing bankruptcy.

The Court entered an order on October 17, 2004, lifting the automatic stay and allowing the Bank to foreclose its lien on the Corvette. For reasons that were not entirely clear to the Court, the Bank has failed to repossess the Corvette. According to the Defendant, the Corvette, which runs fine, is still sitting in front of his house.

A creditor seeking to except a debt from discharge bears the burden of proof. In re Scarlata, 979 F.2d 521, 524 (7th Cir. 1992). A creditor must meet its burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654 (1991). In order to afford the debtor a "fresh start", exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. Meyer v. Rigdon, 36 F.3d 1375 (7th Cir. 1994).

Section 523(a)(2)(B) of the Bankruptcy Code provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" is nondischargeable:

> (2) . . . to the extent obtained by–
>
>> (B) use of a statement in writing –
>>
>>> (i)  that is materially false;
>>>
>>> (ii) respecting the debtor's or an insider's financial condition:
>>>
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied(,) and

-4-

>    (iv) that the debtor caused to be made or
> published with intent to deceive(.)

The statutory exception for debts for money obtained by a materially false financial statement is meant to apply to those debtors who act with dishonest intent, not to those debtors who are merely careless or negligent.  <u>In re Gordon</u>, 277 B.R. 796, 804 (Bankr. M.D. Ga. 2001).  In order for a loan obtained by a false financial statement to be nondischargeable under § 523(a)(2)(B), the creditor must establish each of the following five elements: (1) the debtor made a statement in writing; (2) the statement was materially false; (3) the statement concerned the debtor's financial condition; (4) the debtor intended to deceive the creditor, and (5) the creditor reasonably relied on the misrepresentation.  <u>In re Sheridan</u>, 57 F.3d 627, 633 (7th Cir. 1995).  A financial statement is materially false if it "paints a substantially untruthful picture. . . by misrepresenting information of the type which would normally affect the decision to grant credit" or if the lender would not have made the loan "but for" the debtor's misrepresentations.  <u>In re Morris</u>, 230 B.R. 352 (Bankr. N.D. Ill. 1999), *aff'd* 240 B.R. 553 (N.D. Ill. 1999), *aff'd* 223 F.3d 548 (7th Cir. 2000).

It is not disputed that the financial statements signed by the Defendant on January 3, 2003, and May 8, 2004, are statements in writing concerning the Defendant's financial condition.  The evidence also clearly established that the financial statements were materially false.  The Defendant's biggest asset - the EPI stock - proved to be worthless and the Defendant omitted all of his credit card debt, his medical bill, and the significant student

-5-

loan debt. Although he was only a co-obligor or guarantor of the student loan debt, this Court has held that the omission of a substantial contingent liability is a material omission. In re Martin, 299 B.R. 234 (Bankr. C.D. Ill. 2003), *aff'd* 306 B.R. 591 (C.D. Ill. 2004). The trial in this proceeding focused on two issues: whether the Bank reasonably relied on the financial statements, and whether the Defendant intended to deceive the Bank.

The Bank's president, Jon Best, testified that he personally examined each financial statement submitted by the Defendant. He stated that financial statements are a large factor in the Bank's decision to extend credit. He stated that the Bank relied on the financial statements, and that the Bank would not have loaned money to the Defendant if it knew that the EPI stock was worthless or about the Defendant's true debt situation.

The Defendant does not dispute that the Bank relied on the financial statements, but the Defendant argues that such reliance was not reasonable. The reasonableness of a creditor's reliance on a materially false financial statement is determined on a case-by-case basis. In re Morris, *supra*, 223 F.3d *at* 553. The Defendant asserts that the Bank should have investigated the value of the EPI stock. Mr. Best testified that the Defendant had been a customer of the Bank for so many years that he had earned credibility with the Bank. He also testified that the Bank never considered the Defendant to be in default. Under these circumstances, the Court finds that the Bank reasonably relied without further investigation on the false financial statements. *See* In re Szczepanski, 139 B.R. 842, 845 (Bankr. N.D. Ohio 1991); In re Jones, 88 B.R. 899, 905 (Bankr. E.D. Wis. 1988).

An intent to deceive can be proven through direct evidence or logically inferred from a false representation that the debtor knows or should know will induce another to make a loan. <u>In re Sheridan</u>, *supra*, 57 F.3d *at* 633. A debtor's intent to deceive may also be demonstrated by showing reckless indifference to, or reckless disregard for, the accuracy of the information in a financial statement. <u>In re Napier</u>, 205 B.R. 900, 907 (Bankr. N.D. Ill. 1997). A rebuttable presumption of an intent to deceive arises upon the publishing of a materially false financial statement. <u>In re Jones</u>, *supra*.

The Defendant denied any intent to deceive the Bank. The bankruptcy schedules showed an additional $184,000 in debt that was not listed on the Defendant's financial statement. The Defendant explained that $120,000 of the $184,000 was for a student loan which had never been collected from him. He attributed another $37,000 to credit card debt which had been written off a long time ago. Even if the Court were to accept these explanations as true, they do not explain the Defendant's failure to list another $24,000 in debt. The Defendant offered no explanation for his failure to list the $8,000 medical bill or any other credit card debt. The Defendant stated that he did not list the EPI stock in his bankruptcy schedules because it was worthless, but he could not explain why his valuation of the stock went from $19,000 on the May 8, 2004, financial statement to being worthless 40 days later when he filed his petition. Under these circumstances, the Court finds that the Defendant intended to deceive the Bank about his true financial condition.

The Defendant's note with the Bank provides for costs of

collection and attorney's fees. The Bank has incurred attorney's fees of $5,980.56, but, because the not limits attorney's fees to 15% of the amount due under the note, attorney's fees will be limited to $3,277.22.

Based on the totality of the facts, circumstances, and applicable law, the Court finds that the Bank reasonably relied, to its detriment, on the Defendant's materially false written financial statement, which the Defendant published with an intent to deceive. Therefore, the Court finds the debt of $25,125.35 to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

The Bank's complaint also seeks to deny the Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (a)(5). However, the evidence did not support these claims and the Bank did not pursue them in argument. Therefore, the Court will not deny the Defendant his discharge.

For the foregoing reasons, the debt of $25,125.35 is determined to be nondischargeble pursuant to 11 U.S.C. § 523(a)(2)(B), but the discharge shall issue as to all other debts.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###